IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHADERICK A. INGRAM,

    Plaintiff,

vs.

SACRAMENTO POLICE DEPARTMENT, K-9 Unit, OFFICER G. DAHL #672, DOES 1 to 50;

    Defendants.

    /

No. CIV S-08-2547 LKK EFB PS

<u>ORDER AND</u>
<u>FINDINGS AND RECOMMENDATIONS</u>

    Presently pending before this court is the motion of defendant Gary Dahl to dismiss plaintiff's amended complaint filed November 4, 2008, Dckt. Nos. 19, 7, following defendant's removal of this case from Sacramento County Superior Court on October 24, 2008, Dckt. No. 1. Also pending are several responsive documents and "motions" filed by plaintiff, Dckt. Nos. 20, 22-23, 25-29, 31, 33-41, which the court construes as plaintiff's statements of opposition to the motion to dismiss.

    For the following reasons, the court recommends that defendant's motion be granted in part and denied in part, and that plaintiff be accorded the opportunity to file a second amended complaint.

////

1

I.      BACKGROUND

Plaintiff alleges in his amended complaint, Dckt. No. 7, that on October 27, 2007, while he and a "witness" were sitting in a vehicle parked in front of the witness' residence in Sacramento, California, the two were approached by "brown car . . . with K-9 apparel trailing behind . . ." Compl., at 2-3. "No sirens were sounded as defendant, G. Dahl #672, unlawfully pulled over on the opposite side of the street from where plaintiff and witness were. . . . parked and exited his K-9 vehicle," and approached the car in which plaintiff sat. *Id.* at 3. "Without even asking for valid I.D. nor any identification, defendant G. Dahl #672 then steadily determined and falsely accused plaintiff with an attitude of a matter or matters that plaintiff doesn't involve his self in that plaintiff shouldn't have been approached . . . without cause." *Id*.

"[D]efendant asked plaintiff for approval of search as defendant seem[ed] to already have intentions on doing without justification. Without hesitation plaintiff followed the violating order and exited the vehicle with a broken left leg, ankle and toe on crutches then defendant began to search. Upon search, defendant G. Dahl #672, applied too much pressure to plaintiff's broken left leg causing extreme pain to plaintiff's left broken leg. As plaintiff was being searched, witness phoned plaintiff[']s mother by cell phone in from of the search, as office made rude comments, "who you calling 911, call 911!" *Id.* at 3-4.

"Plaintiff was informed by defendant, Officer G. Dahl #672, that plaintiff had an active misdemeanor warrant that was supposed to be reissued and cleared for a set court date by Grant Joint Union School District Police Service Division Officer C. Breck #203 [not a defendant] August 16 of 2008. After the detention upon the police misconduct with no valid reason of harassment, plaintiff and witness were let go." *Id.* at 4.

On this set of facts, plaintiff claims generally the "violation of his civil rights under the First (1), Six (6) and Fourteenth (14) Amendment[s] of the Constitution of the United States, pursuant to 42 U.S.C. 1983." *Id.* at 1. In the body of his complaint, plaintiff lists and addresses two causes of action, both entitled in "Violation of Civil Rights Pursuant to 42 U.S.C. 1983." *Id*.

at 2, 5. The first cause of action expressly challenges defendant Dahl's "stop," because "officers had no reason to initiate stop," and the search of plaintiff "without cause." This portion of the complaint further alleges "that even if the officers had justification to detain him, they were only justified in the exercise of police misconduct to facilitate the detention and that their actions in harassing, false accusation, belittled and then ridiculed use for the express purpose of causing plaintiff agony and severe stress was an unnecessary excessive use of force being applied to plaintiff's left leg was not justified by the circumstances. . ." Plaintiff contends, that as "a direct and proximate result . . . plaintiff experienced personal injuries, pain and suffering, emotional trauma including extreme fear, anxiety, and trauma, loss of income and loss of future income." *Id.* at 4.

Plaintiff's second cause of action alleges that, during these events, another officer remained in the patrol car and failed to intervene. Generally referred to as "John Doe 1 to 50," plaintiff describes this officer as "wearing a blue shirt with slacks and a tie," and states that he watched Dahl, but refused to make eye contact with plaintiff, or intervene in the conduct of Officer Dahl, and then resumed working on his computer. *Id*. at 6, 7. Plaintiff describes both defendants as Caucasian. *Id*. at 6.

Plaintiff has included in his complaint an allegation that defendants acted under color of state law, and that plaintiff suffers from a mental disability, thus rendering his experience more traumatic. *Id*. at 6, 7.

As to each cause of action, plaintiff seeks the following relief: "(1) Judgment against defendants in an amount to be determined by the court up to [$]3,000,000.00; (2) For cost of suit; and (3) For any such other and further relief as the court deems just and proper." Id. at 5, 8.

II.   LEGAL STANDARDS

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "'The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action.'" *Id.*, quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004) (internal punctuation omitted). Rather, to avoid a Rule 12(b)(6) dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Weber v. Department of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell*, at 127 S.Ct. at 1974).

Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The complaint's factual allegations are accepted as true. *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984). The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). General allegations are presumed to include specific facts necessary to support the claim. *NOW, Inc. v. Schiedler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The court may disregard allegations contradicted by the complaint's attached exhibits. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998). Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts. *Mullis v. U.S. Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987). The court may consider matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)). Finally, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences or unwarranted deductions of fact.

*Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).

*Pro se* pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Unless it is clear that no amendment can cure its defects, a *pro se* litigant is entitled to notice and an opportunity to amend the complaint before dismissal without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (*en banc*); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

III.   DISCUSSION

Defendant Dahl contends that plaintiff has failed to allege any facts demonstrating a violation of his constitutional rights.

A.   Fourth and Fourteenth Amendments

Although plaintiff does not reference the Fourth Amendment in his amended complaint, he does so in his opposition, *see*, *e.g.*, Dckt. No. 20, at p. 3, and the claim is implicit in his factually detailed allegations. The court therefore considers whether plaintiff should be granted leave to file a further amended complaint in order to state explicitly a § 1983 claim under the Fourth Amendment based on the facts alleged.

The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures." To state a claim under the Fourth Amendment, plaintiff must allege that the intrusion was unreasonable in relation to its purpose. *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988). Plaintiff describes, albeit inartfully, a detention and use of force that he suggests exceeds those bounds of reasonableness. "In *Terry*, the Supreme Court held that an officer who lacks probable cause but who can 'point to specific and articulable facts' that 'reasonably warrant' the inference that 'particular person' is committing a crime may briefly detain that person in order to 'investigate the circumstances that provoke suspicion.' [*Terry v. Ohio*, 392 U.S. 1 (1968)] 392 U.S. at 21[]. The Supreme Court has time and again reiterated that the stop must be brief, minimally intrusive, and '"reasonably related in scope to the justification for [its] initiation."' *United States v. Brignoni-Ponce*, 422 U.S. 873, 880-81 [] (1975) (quoting

5

*Terry*, 392 U.S. at 29 []).  An accompanying frisk for weapons is warranted if the officer can articulate specific facts and reasonable inferences that 'he is dealing with an armed and dangerous individual.'  *Terry*, 392 U.S. at 27 [].[1]  The search is 'a limited protective search for concealed weapons,' not a search to discover evidence of a crime.  *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)."  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 209 (5th Cir. 2009).[2]

However, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen. . . . If there is no detention – no seizure within the meaning of the Fourth Amendment – then no

---

[1] The *Terry* court found:

> It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime-'arrests' in traditional terminology.  It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person . . . [I]t is simply fantastic to urge that such a procedure performed in public by a policeman while the citizen stands helpless, perhaps facing a wall with his hands raised, is a 'petty indignity..'  It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly . . .We therefore reject the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a 'technical arrest' or a 'full-blown search.' . . in determining whether the seizure and search were 'unreasonable' our inquiry is a dual one – whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.

392 U.S. at 16-17, 19-20 (internal citations, quotation marks, and fns. omitted).

[2] As the Supreme Court observed in *United States v. Sokolow*, 490 U.S. 1, 7 (1989):

> In *Terry v. Ohio*, 392 U.S. 1, 30 [] (1968), we held that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause.  The officer, of course, must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.' " *Id.*, at 27 [].  The Fourth Amendment requires "some minimal level of objective justification" for making the stop.  *INS v. Delgado*, 466 U.S. 210, 217 [] (1984).

constitutional rights have been infringed." *Florida v. Royer*, 460 U.S. 491, 497 (1983).  Further, "a search conducted pursuant to a valid consent is constitutionally permissible [and] . . . a search authorized by consent is wholly valid." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, (1973) (citations omitted).

A section 1983 claim of excessive force by law enforcement is also analyzed under the Fourth Amendment reasonableness standard.  *Graham v Connor*, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.  Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.  Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* at 396 (internal citations and quotation marks omitted).

Additionally, although the bar is high, plaintiff may be able to assert a substantive due process claim under the Fourteenth Amendment.  However, "[t]he court must also be mindful that viable substantive due process claims must be more than 'tort actions dressed up in constitutional garb,' *Morgan v. Bend-La Pine School Dist.*, 2009 WL 312423, *12 (D. Or. 2009), quoting, *Larson v. Neimi*, 9 F.3d 1397, 1399 (9th Cir.1993), and that such claims represent only a "slim category of cases in which the police have been brutal, employing physical or psychological coercion against the defendant." *United States v. Bogart*, 783 F.2d 1428, 1435 (9th Cir. 1986) (citation omitted), *vacated in part on other grounds sub nom, United States v. Wingender*, 790 F.2d 802 (9th Cir. 1986).  As the Ninth Circuit explained in *Fontana v. Haskin*,

262 F.3d 871 (9th Cir. 2001), "[t]he threshold question is 'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience,'" *id.* at 882, n. 7 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848, n. 8 (1998)).

The reason for, and parameters of, the instant stop and search remain sketchy. While plaintiff concedes that he consented to be searched, it is reasonable to infer that he agreed only to a reasonable search. It is unclear why the officers stopped him in the first place and deemed the search necessary. At a minimum, an articulable suspicion of criminal conduct or presence of evidence of a crime is required for the initial detention. Absent further opportunity for plaintiff to develop his Fourth Amendment claims, it would be premature for the court to dismiss them. The court will therefore recommend that plaintiff be granted leave to amend his complaint to expressly allege a violation of his Fourth and Fourteenth Amendment rights based on his detention, search and excessive force claims, and based on a more carefully detailed chronology of plaintiff's physical and verbal interactions with Officer Dahl.

B. Fourteenth Amendment and Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (per curiam) (quoting the Fourteenth Amendment, and citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

Although plaintiff does not reference "equal rights" or "equal protection" in his amended complaint, he does so in his opposition, *see*, *e.g.*, Dckt. No. 20, at pp. 4, 5.[3]

---

[3] Plaintiff makes repeated allegations that he has a "mental disability" which heightened his trauma in this encounter with law enforcement. If this is intended to suggest that the officer acted with a class-based animus toward persons with a disability, disability is not a suspect class for equal protection purposes. *Does 1-5 v. Chandler*, 83 F.3d 1150 (9th Cir. 1996). Thus, any discrimination claim predicated on disability that plaintiff might assert in an amended complaint

8

To state a claim for the violation of equal protection, a plaintiff must allege that defendant intentionally discriminated against him based upon membership in a protected class, viz., race, alienage, national origin or sex. *Frontiero v. Richardson*, 411 U.S. 677, 682 (1973). While plaintiff has identified defendant Dahl (and Doe defendant) as Caucasian, plaintiff has not informed the court of his own racial or ethnic background – this factor may or may not prove material, but it is relevant in the court's assessment of plaintiff's claims. Accordingly, the court will recommend that plaintiff be granted leave to amend his complaint to identify his racial or ethnic background, and to attempt to state, if applicable, a Fourteenth Amendment equal protection claim. The court notes, parenthetically, that verbal abuse alone is insufficient to establish an equal protection violation, although it can be evidence of racial animus. *Freeman v. Arpaio*, 125 F.3d 732, 738, n. 6 and related text (9th Cir. 1997).

C. First Amendment

Plaintiff explains in his opposition to defendant's motion that his First Amendment challenge is based upon defendant allegedly "aggressively forcing Plaintiff to shut up or else;" "refusing to let Plaintiff express his self;" "[p]rofessionally neglecting Plaintiff[']s wishes as speaking and asking for the cause of the incident[;] [a]lthough Plaintiff[']s (4th) amendment has been swept away[,] Plaintiff still has rights;" "[d]efamation of character, embarrassing Plaintiff;" and "[being] . . . treated like a slave that couldn't speak about why these things were happening." Dckt. No. 20, at 2-3. In essence, plaintiff challenges Dahl's alleged interference with, or denial of, plaintiff's right to speak freely, under threat that something "else" would befall plaintiff, and the refusal of Dahl to respond to plaintiff's questions. Plaintiff cites no case in support of this position and it is difficult to discern a First Amendment violation based on those allegations.

////

////

---

will be reviewed under minimal or rational basis scrutiny.

9

This court has found none on point. Rather, reasonable governmental "restrictions" on free speech may be warranted under some circumstances. *See, e.g., Doe v. County of San Mateo,* 2009 WL 735149, 6 (N. D. Cal. 2009) (dismissed with prejudice plaintiff's First Amendment claims that included being "mocked with inappropriate jokes" and receiving threatening gestures, on ground that "[p]laintiff has not cited any authority for the proposition that complaints made by a detainee during a temporary detention are afforded First Amendment protection"); *Cerniglia v. County of Sacramento*, 2008 WL 1787855, 11 (E.D. Cal. 2008) (First Amendment rights of prison detainees may be restricted provided such restrictions are reasonably related to a legitimate penological purpose, *citing Turner v. Safley*, 482 U.S. 78, 89, 93 (1987)); *Pell v. Procunier,* 417 U.S. 817, 822 (1974) ("[First Amendment] challenges to prison restrictions . . . must be analyzed in terms of the legitimate policies and goals of the corrections system").

It is reasonable to conclude that directing an individual to be quiet during a search, or declining to answer the individual's questions, is reasonably related to the officer's need to concentrate and act quickly, and cannot therefore be said to impermissibly impinge upon the individual's exercise of free speech. The complaint, although factually detailed, simply fails to present facts, which if true, give rise to a cause of action under the First Amendment. Nor does it appear that any amendment to those allegations would cure the deficiency. The gravamen of his complaint is an alleged unreasonable detention, search and use of force, not denial of his right of expression. Accordingly, the court will recommend that this claim be dismissed with prejudice.

     D. <u>Sixth Amendment</u>

Although plaintiff does not articulate the basis of his Sixth Amendment claim, the court construes it as an alleged violation of that amendment's requirement that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." This guarantee is applicable to the states through the due process clause of the

Fourteenth Amendment. *In re Oliver*, 333 U.S. 257, 273-74 (1948).  However, this right was not triggered under the circumstances of this case.  In the absence of an arrest or charge, plaintiff cannot be said to be an "accused" subject to the protections of the Sixth Amendment.  *See, e.g., United States v. Marion*, 404 U.S. 307 (1971).[4]  The court will therefore recommend that plaintiff's Sixth Amendment claim be dismissed with prejudice.

E.  Eighth Amendment

Plaintiff's claim under the Eighth Amendment, which, in pertinent part, protects against cruel and unusual punishment, is without merit.  "Eighth Amendment scrutiny is appropriate only *after* the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham v. Wright*, 430 U.S. 651, 671-672, n. 40 (1977) (emphasis added).  "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment."  *United States v. Lovett*, 328 U.S. 303, 317-318 (1946); *see also*, *Bell v. Wolfish*, 441 U.S. 520, 537 (1979) ("Due process [not the Eighth Amendment] requires that a pretrial detainee not be punished").

Thus, plaintiff, who was not subjected to a criminal charge, prosecution or sentence, has no basis for making a claim under the Eighth Amendment.  The court will therefore recommend that plaintiff's Eighth Amendment claim be dismissed with prejudice.

////

////

////

---

[4] This conclusion is not altered by examination of the other rights protected by the Sixth Amendment, viz., "the right to a speedy and public trial, by an impartial jury . . ., to be confronted with the witnesses against him; to have compulsory process of obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

F.  <u>Doe Defendants</u>

Plaintiff attempts generally to state a cause of action against "John Doe 1 to 50," with specific reference to the man, presumably an officer, who remained in the car during plaintiff's encounter with Officer Dahl.  To the extent that plaintiff may be able to state a valid claim against Officer Dahl, he may also state a claim against "John Doe 1."

"'For liability under section 1983, direct participation is not necessary.  Any official who 'causes' a citizen to be deprived of [his] constitutional rights can also be held liable.  The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.' *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990)." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279 -1280 (10th Cir. 2008).  "'[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.'" *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (quoting *United States v. Koon*, 34 F.3d 1416, 1447, n. 25 (9th Cir.1994), *rev'd on other grounds*, 518 U.S. 81 [](1996)).

Accordingly, plaintiff should be permitted leave to amend his complaint to make the same or related allegations against defendant John Doe 1(whom plaintiff should name, if possible),[5] as plaintiff makes against defendant Dahl.

IV.  CONCLUSION

For the foregoing reasons, plaintiff has not stated a claim under the First, Sixth and Eighth Amendments, and that these claims should be dismissed without leave to amend.

////

---

[5] Amendment of a complaint to identify a Doe defendant may give rise to a statute of limitations issue that is subject to analysis pursuant to Fed. R. Civ. P. 15(c).  While the original complaint in this action was filed in state court, the pleading of Doe defendants in that complaint cannot circumvent the requirements of Rule 15(c).  This court's jurisdiction is premised on federal subject matter, not diversity of citizenship, thus California's Doe defendant statute does not apply.  *Cf. Lindley v. General Elec. Co.*, 780 F.2d 797, 799-801 (9th Cir. 1986) (federal court sitting in diversity must apply the state's Doe Defendant statute).

However, he should be granted leave to file a Second Amended Complaint that more fully articulates his claims under the Fourth and Fourteenth Amendments. *See Lopez v. Smith*, *supra*, 203 F.3d at1126-27 (district courts must afford *pro se* litigants an opportunity to amend to correct any deficiency in their complaints).

Should plaintiff file a Second Amended Complaint, he must comply with the requirements of Fed. R. Civ. P. 8(a). Rule 8(a)(2) "requires a complaint to include a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic*, *supra*, citing *Conley v. Gibson*, 355 U.S. 41 (1957). Plaintiff is further informed that the court cannot refer to prior pleadings in order to make an amended complaint complete. Local Rule 15-220 requires that an amended complaint be complete in itself. "[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint," *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981), and defendants not named in an amended complaint are no longer defendants, *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Finally, the court cautions plaintiff that, although he proceeds in *pro se*, failure to comply with the Federal Rules of Civil Procedure, this court's Local Rules, or any court order may result in a recommendation that this action be dismissed. *See* Local Rules 11-110, 83-183.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's numerous filings, Dckt. Nos. 20, 22-23, 25-29, 31, 33-43, 45-46, shall be construed as statements of opposition to defendant's motion to dismiss; and

2. The Clerk of Court shall remove from the docket any designation or symbol as to these documents that indicates the necessity of further action by this court.

Further, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion to dismiss plaintiff's complaint be granted in part, and that plaintiff's claims pursuant to the First, Sixth and Eighth Amendments be dismissed without leave to amend;

2. Defendant's motion to dismiss plaintiff's complaint be denied in part, and that plaintiff be granted leave to file a Second Amended Complaint, against defendants Dahl, John Doe 1 (whom plaintiff should name, if possible), and the Sacramento Police Department, which better articulates plaintiff's claims pursuant to the Fourth, and Fourteenth Amendments; and,

3. Plaintiff be required to file his Second Amended Complaint within thirty days of the filing date of any order adopting these recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 4, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

14